IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| KIMBERLY R.,[1] <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY,[2] <br><br> Defendant. | Case No. 6:17-cv-00149-AA <br> **OPINION AND ORDER** |

AIKEN, Judge:

Plaintiff Kimberly R., proceeding *pro se*, brings this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

[2] Nancy A. Berryhill's term as the Acting Commissioner of the Social Security Administration ended on November 17, 2017, and a new Commissioner has not been appointed. The official title of the head of the Social Security Administration is the "Commissioner of Social Security." 42 U.S.C. § 902(a)(1). A "public officer who sues or is sued in an official capacity may be designated by official title rather than by name[.]" Fed. R. Civ. P. 17(d). I therefore refer to defendant only as Commissioner of Social Security.

Page 1 – OPINION AND ORDER

application for Supplemental Security Income ("SSI"). For the reasons set forth below, the Commissioner's decision is affirmed.

## BACKGROUND

In January 2013, plaintiff applied for SSI. She alleged disability due to diverticulitis, aortic aneurysm, herniated diaphragm, chronic obstructive pulmonary disease ("COPD"), reduced lung capacity, tumors and screws in her feet, back spasms, chronic pain, panic attacks, high blood pressure, abdominal pain, fatigue, depression, and cataracts. Plaintiff's application was denied initially and upon reconsideration. On April 2, 2015, plaintiff appeared at a hearing before an ALJ. On July 24, 2015, the ALJ issued a decision finding plaintiff not disabled. After the Appeals Council denied review, plaintiff filed a complaint in this Court.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based upon proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014) (citation and quotation marks omitted). The court must weigh "both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). If the evidence is subject to more than one interpretation but the Commissioner's decision is rational, the decision must be affirmed because "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## COMMISSIONER'S DECISION

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet that burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920(a)(4). At step one, the ALJ found that plaintiff had not engaged in "substantial gainful activity" since January 31, 2013. Tr. 10; 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ found plaintiff suffered from the following severe impairments:

> degenerative joint disease of the bilateral lower extremities, status post bilateral ankle factures with retained hardware; peripheral neuropathy with history of right foot cellulitis ulcerations, stats post amputation distal second right toe and residual non-ulcerative callus formations; diaphragmatic hernia; chronic obstructive pulmonary disease (COPD); [and] major depressive disorder in combination with alcohol dependence.

Tr. 10; *see also* 20 C.F.R. § 416.920(a)(4)(ii), (c). The ALJ considered evidence in the record related to plaintiff's thoracic aortic aneurysm, but found that impairment was not severe because it did not significantly affect plaintiff's ability to work.

At step three, the ALJ determined plaintiff's impairments, whether considered singly or in combination, did not meet or equal "one of the listed impairments" that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. Tr. 12; *see also* 20 C.F.R. § 416.920(a)(4)(iii), (d). The ALJ found plaintiff retained the residual functional capacity ("RFC") to

> perform sedentary exertion work with lifting and carrying of 10 pounds occasionally and frequently, standing and walking at least two hours of an eight hour workday and sitting about six hours of an eight hour workday. She can never climb ladders and frequently stop, kneel, crouch, crawl, and climb ramps and stairs. The claimant can never use foot controls. She is to avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc. The claimant can have occasional coworker contact and no public contact.

Tr. 14; *see also* 20 C.F.R. § 416.920(e).

At step four, the ALJ concluded plaintiff could not perform her past relevant work as a hair stylist or sales clerk because they required both public contact and more than sedentary physical activity. 20 C.F.R. § 416.920(a)(4)(iv). At step five, the ALJ found plaintiff could perform other jobs existing in significant numbers in the national economy, such as computer controlled color photograph printer operator, assembler of small products, and electronics assembler. 20 C.F.R. § 416.920(a)(4)(v), (g)(1). Accordingly, the ALJ found plaintiff not disabled and denied her application for benefits.

## DISCUSSION

I. *Scope of this Appeal*

In her brief, plaintiff asserts that a thoracic aortic aneurysm caused her to be unable to work. She states that symptoms from the aneurysm were present for years before she was diagnosed and that providers incorrectly attributed those symptoms to anxiety. She requests an award of SSI dating "back to the time the aneurysm should have been discovered." Pl.'s Br. 2 (doc. 19).

Plaintiff was first diagnosed with an aneurysm in January 2013. Plaintiff appears to be requesting benefits back to 2007, when she left her last job as a hairdresser for Precision Cuts. At the hearing, plaintiff testified that she was fired from that job because she "thought [she] was

having a heart attack." Tr. 52. In her reply brief, plaintiff asserts that the symptoms she experienced that day at Precision Cuts were caused by her then-undiagnosed aneurysm.

The present appeal concerns only the Commissioner's denial of plaintiff's January 2013 application for benefits. Plaintiff has applied for disability benefits multiple times in the past. In connection with previous SSI applications, plaintiff was found not disabled on August 21, 2012; on September 12, 2011; and on April 22, 2011. Plaintiff did not pursue any of those claims through the judicial review level, which means the Commissioner's prior determinations of nondisability are "final and binding" unless the Commissioner reopens them. 20 C.F.R. § 416.1487.

This Court lacks authority to reopen any of plaintiff's previous SSI claims. Social Security regulations specify that a request to reopen a final disability decision must be directed to the Commissioner, not to the court. 20 C.F.R. § 416.1487(b). It is thus up to the Commissioner to decide whether plaintiff satisfies the requirements to reopen a prior decision. *See* 20 C.F.R. § 416.1488. In addition, because reopening is discretionary, federal courts lack jurisdiction to review the Commissioner's denial of a request to reopen unless the plaintiff can show that the denial violated her due process right to notice and an opportunity to be heard. *Udd v. Massanari*, 245 F.3d 1096, 1098–99 (9th Cir. 2001). To the extent that plaintiff is asking me to find her disabled at any time other than the period of time related to the application now under review, that request is dismissed for lack of jurisdiction.

The ALJ's finding of nondisability is tied to January 31, 2013, which the ALJ identified as the application date. The ALJ erred in assessing disability beginning January 31, 2013, and

should instead have considered the period beginning August 22, 2012.[3] That error, however, was harmless. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). Nothing in the record indicates that plaintiff's symptoms and limitations were appreciably different or worse in late 2012 than they were in early 2013 and later.

I will now proceed to consider the merits of plaintiff's arguments with respect to a period of alleged disability beginning August 22, 2012.

II. *Failure to Classify Aortic Aneurysm as "Severe" at Step Two*

Plaintiff argues that the ALJ erred by failing to give due consideration to symptoms caused by her heart aneurysm, leading him to misclassify the aneurysm as not severe. The step two inquiry is a *de minimis* screening device used to dispose of groundless claims. *Bowen*, 482 U.S. at 153–54. The claimant bears the burden of establishing that he has a severe impairment at step two by providing medical evidence. 20 C.F.R. § 416.912. An impairment or combination of impairments is "not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on the individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (emphasis in original). Where an ALJ fails to identify a severe impairment at step two, but nonetheless considers at all subsequent steps the effect of the erroneously omitted severe impairment, the error at step two is harmless. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

Plaintiff contends that symptoms attributable to her aneurysm were misdiagnosed for years as panic attacks. That may be true, but even assuming that it is, the misdiagnosis could not

---

[3] Plaintiff filed the relevant SSI application on January 17, 2013, alleging disability beginning, at the latest, December 31, 2007. However, as explained above, the Appeals Council's August 21, 2012 nondisability decision is final and binding on this Court. As a result, August 22, 2012 is the earliest date on which plaintiff could be found disabled with respect to the application now under review.

Page 6 – OPINION AND ORDER

have affected the ALJ's decision with respect to *this* application because plaintiff submitted records related to her aneurysm diagnosis to the ALJ before the hearing. It is clear that the ALJ reviewed those records, as he asked questions about the aneurysm at the hearing and discussed the aneurysm in his decision. Any misdiagnosis earlier in plaintiff's medical records did not affect the ALJ's decision here.

In disability decisions, "severe" is a term of art. "Severe" does not describe whether the impairment in question carries a risk of severe consequences. Instead, "severe" refers to the extent to which a given impairment affects a claimant's ability to work—for example, how much weight she can carry, how long she can stand without resting, and how much she can interact with others. *See* 20 C.F.R. § 416.920(c) (stating that an impairment is "severe" if it "significantly limits" a claimant's "physical or mental ability to do basic work activities[.]"). Here, the medical record clearly shows that plaintiff's aneurysm may have serious consequences in the future; neither this decision nor the ALJ's decision states or suggests that being diagnosed with an aneurysm is insignificant in that broader sense. But there is no evidence in the medical record that symptoms caused by plaintiff's aneurysm have more than a minimal effect on her ability to do basic work activities. To the contrary, one treating physician characterized plaintiff's aneurysm as "stable" and "asymptomatic." Tr. 560. He recommended "periodic radiographic surveillance" and instructed plaintiff to follow up "in 2 years for evaluation in conjunction with a non-contrast CT of the chest." *Id.* Plaintiff points to a medical record in which a different treating physician reported that plaintiff could not lie flat or on her left side due to her heart racing. As the government points out, none of the jobs the ALJ identified at step five require her to lie flat or lie on her left side, so that observation is immaterial to the disability analysis.

Plaintiff is correct that her reports about how she subjectively experiences her symptoms are relevant to the disability determination. The Social Security regulations specifically list a claimant's description of her own symptoms among the evidence the Commissioner must consider in making a disability decision. *See* 20 C.F.R. § 416.929(a). However, a claimant's statements about her symptoms are not conclusive proof of disability. Instead, the ALJ must decide how much evidentiary weight to give to those statements by comparing the claimant's testimony to other evidence in the record. If the ALJ decides to give less than full weight to a claimant's symptom testimony, he must justify that decision with "specific, clear and convincing reasons[.]" *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).

Here, the ALJ concluded that plaintiff's statements "concerning the intensity, persistence and limiting effects" of her symptoms were "not entirely credible." Tr. 15. He provided several specific reasons for that decision. For example, the ALJ noted that plaintiff's statements about her problems standing and walking conflicted with evidence in the record that she had walked and stood extensively on a trip to Disneyland. Such a conflict is a clear, convincing reason to give less weight to a claimant's symptom testimony. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (stating that an ALJ may conclude, based on a claimant's testimony about her own activities, that she is "more functional than alleged"). The ALJ also found that plaintiff's resistance to the treatment suggestions of her providers and general preference for conservative treatment undermined her statements about the severity of her symptoms. That, too, is a clear, convincing reason to discredit a claimant's symptom statements. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (holding that an ALJ permissibly may infer from conservative treatment that an impairment is not as disabling as alleged). The ALJ did what the regulations require: he considered plaintiff's description of her symptoms as one piece of evidence in the

record. Because his decision to give less than full weight to her testimony is supported by clear, convincing reasons, I am bound to uphold it.[4]

The ALJ reasonably determined, based on all the evidence in the record, that plaintiff's aneurysm does not significantly limit her ability to do basic work activities. Thus, his finding at step two is supported by substantial evidence.

## CONCLUSION

The Commissioner's decision is AFFIRMED and this appeal is dismissed.

IT IS SO ORDERED.

Dated this 25 day of June 2018.

_____
Ann Aiken
United States District Judge

---

[4] Plaintiff did not expressly challenge the ALJ's decision to give less weight to her testimony about her symptoms. But such a challenge is implicit in her reply brief. *See* Pl.'s Reply 2 (doc. 21) ("[T]he entire record is based on my statements to my Doctors! Furthermore, only the person experiencing events/symptoms knows the severity of anxiety, when something is not right."). Because plaintiff is *pro se*, I have carefully considered whether the ALJ erred in evaluating her symptom statements. For the reasons set out above, I find no error.